IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STACY L. NAFF,

    Plaintiff,

vs.

Case No. 06-1365-JTM

MICHAEL J. ASTRUE, Commissioner of
Social Security,

    Defendant.

MEMORANDUM AND ORDER

Plaintiff Stacy Naff has applied for Social Security disability insurance and supplemental security income benefits. His application was denied by the Administrative Law Judge on February 22, 2005, a decision affirmed by the Appeals Council on October 12, 2006. There are two allegations of error by Naff – that the ALJ failed to properly evaluate his impairments under the listings, and that he failed to make appropriate findings at Step Four.

Plaintiff-claimant Naff was born on August 4, 1958. He has stated that he became disabled beginning March 1, 2002. He has a 10th grade education, and has previously worked unskilled jobs such as laborer, janitor, concrete construction worker, and assembler. He has cited as the basis for his disability mental impairments and the adverse effects of a prescribed medication. The detailed facts of the case, which are incorporated herein, are set forth independently in the ALJ's opinion (Tr. 16-25), and set forth *seriatim* in the argument sections of the briefs of Naff (Dkt. No. 7, at 2-6), and the Commissioner (Dkt. No. 8, at 3-9).

The ALJ concluded that Naff had "a longstanding history of polysubstance abuse disorder, in reported remission; a bipolar affective disorder; and adult attention deficit disorder." (Tr. 16). The ALJ found that these impairments were severe, and met the severity requirements of Section 12.09. However, when excluding the effects of drug or alcohol impairment (pursuant to Pub.L. 104-121), the ALJ determined that Naff was only subject to mild limitations, and that Naff was subject to

> mild restriction of activities of daily living; mild difficulties in maintaining social functioning; and mild difficulties in maintaining concentration, persistence or pace. Claimant experienced some brief episodes of exacerbated mental symptoms during the relevant timeframe at issue in this claim, but he subsequently improved rapidly with either sobriety, prescribed medications, normal coping skills, or normal grieving processes; and such episodes were not of a level of decompensation of extended duration as defined in Section 12.00C4.

(Tr. 17)

Naff stated at the hearing that he was taking Ritalin (for adult attention-deficit disorder) and Valium/Diazepam (for bipolar disorder). The ALJ reviewed Naff's medical history, noting Naff's lengthy history of substance abuse and successful treatment of his mental disorders. He noted that the last treatment note in the record (from April 2004) "demonstrated normal psychiatric findings and opined that claimant's attention deficit disorder was stable," and also indicated that Naff denied any negative side effects from his medication. (Tr. 21). The ALJ also received the testimony of an independent medical expert, Dr. Stanley Golon, who stated

> that the evidence reveals claimant had chronic problems with substance abuse throughout the 1990s, but that his other psychiatric symptoms were greatly improved during long periods of sobriety during that timeframe. He specified that, during the relevant timeframe at issue in the current claim, multiple treatment records similarly reflect claimant was doing well during periods of sobriety, but experienced some exacerbations of bipolar symptoms and difficulties with attention, concentration, and distractibility, particularly during periods of bereavement or when abusing illicit

>  drugs; and he cited multiple records from Dr. Kisker dated during the relevant timeframe at issue that reflect claimant retained good ability to handle activities of daily living, as well as the treating psychiatrist's multiple assignments of Global Assessment of Functioning scores indicative of very good functioning during periods of sobriety.

(Id.)

The ALJ expressly noted that Dr. Kisker had described Naff as "unemployable" in September of 2002, but found this conclusion was of limited utility, as it was an administrative or legal conclusion rather than a medical finding. Further, he noted that this opinion failed to exclude the effect of Naff's substance abuse history, but instead was based on seeing Naff shortly after a recent cocaine binge of several weeks in duration. Finally, he noted that the opinion was inconsistent with Dr. Kisker's own high GAF scoring of Naff, which indicated only mild functional difficulties.

In the present appeal, Naff contends that evidence supports his meeting a listed impairment, Listing 20 C.F.R. Part 404, Subpart P, app. 1, pt. A, § 12.05B, and cites the IQ test he was given by Robert Barnett, Ph.D in January of 2005. He states that the ALJ erred in rejecting this evidence by relying on evidence from before the present onset date.

An ALJ may discount a reported IQ score, so long as there are substantial reasons for a such conclusion. *McKown v. Shalala*, 1993 WL 335788, *3 (10th Cir. 1993). Here, such reasons exist. First, the administrator of the test himself, Barnett, actively doubted that the IQ results had any merit, stating that "the validity of [Naff's] responses and the test results are questionable due to his lethargy." (Tr. 567). The ALJ noted that such an interpretation is corroborated by Naff's long history of lethargy caused by his overuse of prescribed Valium. The ALJ also noted that the 2005 results were much lower – by nearly thirty points – than earlier results. Absent any evidence of some intervening condition, IQ scores may be presumed to remain stable over time. *Clay v. Barnahrt*, 417

F.3d 922, 929 (8th Cir. 2005). The court finds that the ALJ did not err in refusing to give controlling weight to the 2005 test results, in the face of substantial evidence indicating that the results were not valid.

Second, Naff contends that the ALJ erred in failing to make the required findings at Step Four. Specifically, he contends that the ALJ erred in failing to make explicit findings as to the requirements of his past relevant work, contrary to *Winfrey v. Chater*, 92 F.3d 1017, 1023-25 (10th Cir. 1996). The court finds that any error is harmless. First, the ALJ's step four finding was unnecessary, since he had previously found that, when excluding the effects of Naff's substance abuse problem, he had no significant exertional or nonexertional limitations. The deliniation of the exact nature of a claimant's past relevant work is necessary to determine if a claimant suffering from functional limitations can still do that work. Here, since Naff had *no limitations*, the failure to define precisely the nature his past relevant work could not effect the outcome of the case. Second, even if the ALJ had somehow erred in the Step Four evaluation, the ALJ nonetheless proceeded to Step Five and determined that Naff would not be disabled under Medical-Vocational Rule § 204.00. (Tr. 25). The court finds no harmful error in the opinion of the ALJ.

IT IS ACCORDINGLY ORDERED this 16th day of January, 2008, that the present appeal is hereby denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE